## The Inhabitants of MONSON *versus* The Inhabitants of CHESTER.

A person cannot gain a settlement in a town under the fifth mode, in *St.* 1793, *c.* 34, (Revised Stat. *c.* 45, § 1,) unless for five successive years his estate shall have been introduced into the valuation of estates made by the assessors, and shall have been valued, the principal at 60*l.* or the interest at 3*l.* 12*s.*, and he shall have been actually assessed for the same, it not being sufficient that he had estate liable to taxation in the town, and was able to pay taxes, for that period of time.

ASSUMPSIT for expenses incurred in the support of Phebe
Saunders, a pauper, whose settlement was alleged by the plain-
tiffs to be in Chester.

On a case stated it appeared, that in order to prove that
Henry Leonard, the husband of the pauper, and from whom
her settlement was derived, had acquired a settlement in Ches-
ter, the plaintiffs offered in evidence an instrument in writing,
dated the 14th of February, 1797, whereby the selectmen of
Chester, in conformity with a vote of the inhabitants of that
town, leased to Jeremiah Curtis, his heirs and assigns, one
hundred and twenty acres, by estimation, of their school lands,
for the term of nine hundred and ninety-nine years from that
date, to have and to hold the same to him, his heirs and as-
signs, as an absolute estate of inheritance for such term, upon
the condition that he, his heirs and assigns, should pay therefor
annually, to such selectmen, six per cent on the sum of $ 120.

Monson
v.
Chester.

This lease was assigned to Leonard, who paid to the assignor the sum of $400, for betterments which had been made on the land after the lease was given. Leonard entered upon the land and occupied it from March 9th, 1805, to March 9th, 1813, and then assigned the lease to one Cole, and also quitclaimed the land to Cole, for the sum of $600. Leonard was able, during the whole time of his residence in Chester, to pay taxes on such land, but was never taxed therefor.

*Sept. 24th.*

R. A. Chapman and Ashmun, for the plaintiffs, to the point, that the pauper acquired a settlement in Chester under the fifth mode prescribed in St. 1793, c. 34, § 2, notwithstanding the neglect of the assessors of that town to assess a tax upon him, upon the principle, that the town could not take advantage of its own wrong, cited Wrentham v. Attleborough, 5 Mass. R. 430; Conway v. Deerfield, 11 Mass. R. 330; Reading v. Tewksbury, 2 Pick. 535; Charlemont v. Conway, 8 Pick. 408.

O. B. Morris, for the defendants, cited Danvers v. Boston, 10 Pick. 513; Attleborough v. Middleborough, 10 Pick. 378; Robbins v. Townsend, 20 Pick. 345; Billerica v Chelmsford, 10 Mass. R. 397.

*Sept. 26th.*

MORTON J. delivered the opinion of the Court. The settlement of Henry Leonard, whose wife the pauper was, and whose settlement she has, depends upon the construction of St. 1793, c. 34, § 2.

He could gain no settlement under that statute, except by the *fifth* mode prescribed. His lease, for *nine hundred and ninety-nine* years, was merely a chattel interest, and does not bring him within the *fourth* mode as it stood in the original statute, or as it was revised in St. 1821, c. 94, § 2, and now stands in Revised Stat. c. 45, § 1. In all the versions, an estate of inheritance or freehold is required.

By the *fifth* mode, any citizen, " having an estate, the principal of which shall be set at *sixty pounds*, or the income, at *three pounds and twelve shillings*, in the valuation of estates made by assessors, and being assessed for the same, for the space of five years successively, in the town where he dwells, shall thereby gain a settlement." To acquire a settlement in this mode, seven things must concur. A person must be a citizen of the United States; he must have an estate ; he

must dwell in the town where his estate is ; he must be assessed for it ; that estate must be included in the valuation of the assessors ; it must be " *set* " by them, the principal at *sixty pounds*, or the income at *three pounds and twelve shillings ,* and the above valuation and assessment must be continued for five successive years.  A failure in any one of these particulars, is as fatal as a failure in the whole.  It is very manifest that the legislature did not intend to make the settlement depend upon the value of the estate or the liability to assessment.  If so, they would have expressed it more directly.  The *fourth* mode was founded upon the clear yearly income.  And this, upon experience, was found to be so uncertain and difficult of proof, after the great lapse of 'time which usually intervenes between the occurrence of the facts, and the trial, that the legislature deemed it expedient to change the rule, so as to leave the mode to depend upon the holding of the estate, without regard to the amount of the income.  *St.* 1821, *c.* 94, § 2 ; Revised Stat. *c.* 45, § 1.  The fifth mode has, at least, what is of great importance in merely positive regulations, certainty and facility of proof, to recommend it.

The pauper's husband resided in Chester more than five years successively, and held an estate, while there, of more than sixty pounds value and the income of which was more than three pounds and twelve shillings.  But it never was set in the valuation at the former sum, or the income of it, at the latter ; nor was he ever assessed for the same.  It is therefore perfectly clear, that he does not come within the letter of the statute.  If it be made to embrace him, the provision in question must be extended, by some equitable construction, according to what may be deemed the spirit of the statute.

Equitable constructions, though they may be tolerated in remedial and perhaps some other statutes, should always be resorted to with great caution ; and never extended to penal statutes or mere arbitrary regulations of matters of public policy.  The power of extending the meaning of a statute beyond its words, and deciding by the equity, and not the language, approaches so near the power of legislation, that a wise judiciary will exercise it with reluctance and only in extraordinary cases.

In *Danvers* v. *Boston*, 10 Pick. 513, it is said, that " ques＊ tions of legal settlement have very properly been held to depend upon a strict and precise application of the rules of positive law. Towns being under no obligation to support paupers, except that created by law, a case must be brought strictly within the provisions of the law, before the obligation arises ; and approximation, however near, will not be sufficient " And in *Billerica* v. *Chelmsford*, 10 Mass. R. 397, the late learned and accurate Chief Justice *Sewall* said, " the positive rule en acted is a line of discrimination by which questions of this kind are to be decided. And we must not render the rule uncer tain, the line variable and shifting, if I may so express it, by yielding to arguments of expediency, or by reasoning upon the general purposes of the discrimination. The purpose of the legislature, which is fully expressed, and is suited to the occa- sion, is a line of demarkation arbitrarily assumed, indeed, but to be punctiliously observed."

With these principles for our guide, we shall not find it diffi- cult to solve the question before us. The plaintiffs' counsel contend that, inasmuch as the pauper's husband had sufficient property liable to taxation and was able to pay taxes, it was the duty of the assessors of Chester to include it in the valua- tion. They further argue, that the assessors were the agents of the town, and that the defendants should not be allowed to take advantage of their own wrong or neglect, whether com- mitted by themselves or their agents. This is undoubtedly a sound principle. But its full application to the present case may well be doubted. The assessors are sworn officers. Their guide is the law, and not the will of their constituents. They are not therefore to be deemed agents, within the mean- ing of the above rule.

But in support of the application of the above rule to the case before us, the plaintiffs' counsel rely upon the case of *Wrentham* v. *Attleborough*, 5 Mass. R. 430. There is no doubt, that this case gives some support to their argument, and that it contains some *dicta* broad enough to cover their whole ground. That case has been somewhat shaken. The princi- ples above quoted cannot be easily reconciled with some of its doctrines. The cases of *Reading* v. *Tewksbury*, 2 Pick.

535, and *Robbins* v. *Townsend*, 20 Pick. 345, trench upon it. In the former, the Court held that there might be cases in which the omission to tax a pauper, who had property liable to taxation, would prevent his gaining a settlement. And in the latter, it was decided, that the failure of the town, through negligence, to collect a tax, which had been duly assessed upon the pauper, and which he was able to pay, was not equivalent to the actual payment of it, and would not bring him within the twelfth mode.

But we have now no occasion to impugn the judgment in *Wrentham* v. *Attleborough*. There is a manifest distinction between that case and this. That case turned upon the *twelfth* mode ; this, upon the *fifth*. In that, it was assumed, that the omission of the assessors was fraudulent ; in this, no fraud is imputed. We are not therefore called upon to decide what effect the fraudulent omission to assess under the *fifth* mode, would have. While we do not overrule the case of *Wrentham* v. *Attleborough*, we certainly do not intend to extend any of its doctrines beyond the literal meaning of the language used.

The legislature has prescribed certain arbitrary rules for the purpose of fixing the settlement of paupers. It is not our province to inquire whether they are wise or unwise, whether they operate equitably and beneficially or the reverse, but whether each particular case comes within any of the rules established.

One of these rules requires the occupancy of a freehold estate for three successive years. Now we cannot say, that two years and three hundred and sixty-four days, or that three years, at different periods, are sufficient ; *Billerica* v. *Chelmsford*, 10 Mass. R. 394 ; nor that a lease for nine hundred and ninety-nine years is, to all practical purposes, a greater estate than a tenancy for life, and therefore comes within the reason and the equity of the statute. *Ita lex non scripta est.*

Another rule requires ten years residence and the payment of taxes for five of the years. And we have no power to hold that nine years and eleven months residence, or the payment of taxes for four years and the ability to pay on the fifth, without an assessment or payment, will give a settlement. This

<div style="float:left">Mouson<br>v.<br>Chester.</div>

would be, as Chief Justice *Sewall* said, making the rule uncertain and variable, or establishing a new rule.

And in the rule now under consideration, the legislature has seen fit to establish as the criterion of a settlement, not the holding of an estate of a particular kind, nor the payment of taxes, but the introduction of the estate into the valuation of the assessors, the valuing it at a certain gross amount or a certain annual income, and the actual taxation for it. And we are of opinion, that these several requisites are indispensable, and that if either of them is omitted, it is fatal to the acquirement of a settlement.

If the assessors include the estate and set it below sixty pounds, or the annual income, below three pounds and twelve shillings, it would not be competent to show that they appraised it too low. So, on the other hand, if they valued it above these sums, it would not be competent to show, that they appraised it too high, and that in fact it was not worth enough to give the owner a settlement. Their valuation and assessment must, under this rule, be the test, and must govern the settlement.

*Plaintiffs nonsuit.*